No. 37,430

DON E. SHIRACK and DORIS R. SHIRACK, *Appellees*, v. B. B. GAGE, doing business as Gage Plumbing and Heating Company, and KENT DAVIS, *Appellants*.

(204 P. 2d 587)

Opinion filed April 9, 1949.

*John Q. Royce*, of Salina, argued the cause, and *B. I. Litowich, LaRue Royce, E. S. Hampton, H. H. Dunham, Jr.* and *H. G. Engleman*, all of Salina, were with him on the briefs for the appellants.

*Alex H. Miller*, of Salina, argued the cause, and *Matt Guilfoyle* and *John Lehman*, both of Abilene, were with him on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: Plaintiffs brought this action to recover damages for the death of their son, Garry Eldon Shirack, two and one-half years old, alleged to have resulted from the negligence of defendants. The jury answered special questions and returned a general verdict for plaintiffs. Defendants moved the court "to render judgment . . . in their favor against the plaintiffs upon the answers to special questions . . . and the undisputed evidence notwithstanding the general verdict. . . ." This motion was overruled. Defendants have appealed and present this ruling. It is the sole question presented for review.

The record may be summarized as follows: In Salina, Ninth street is a north-and-south street, 80 feet wide, paved with brick 46 feet, 7 inches, with parkings on each side of the pavement and

a sidewalk on each side of the street in front of the lots. Formerly it was a part of U. S. Highway No. 81 and was a heavily traveled street. A few years prior to the happening of the events which gave rise to this action U. S. Highway No. 81 had been routed over another street, which greatly reduced the traffic on Ninth street. John Caldwell lived at 639 Ninth street, his house facing the east. His family living with him at the time in question consisted of himself, his wife and his two daughters, Lois, about seventeen years of age, and Donna, about fifteen. Almost directly across the street, at house No. 640, was the Robert A. Godbey residence, occupied by him and his wife and their child, Mike Godbey, aged about two and one-half years at the time of the tragedy. They had tenants in the upstairs rooms. There was a porch across the front of their residence which extended to within five feet of the west end of their lots. About 70 feet north of the Caldwell home was the south side of Grand avenue, an east-and-west street which intersected Ninth street. The plaintiff, Don E. Shirack, was twenty-two years of age at the time of the tragedy and his wife twenty-one. He had been in the armed service in World War II for three years and had returned about a month before the tragedy. They had a son, Garry, whose death was the subject of this action. Doris R. Shirack was the daughter of John Caldwell and his wife, and while her husband was in the armed service she and Garry lived with her parents and sisters. Since the two children, Garry Shirack and Mike Godbey, were about ten months of age they had been playmates. Mrs. Shirack, or some member of the Caldwell family, would take Garry across the street to the Godbey home and leave him to play with Mike, or some member of the Godbey home would take Mike over to the Caldwell home and leave him to play with Garry. When the child who was taken across the street was ready to go home someone there would take him to his home, or the parents would come for him. Garry had been taught not to play in the street or to go into the street alone. He was a sturdy, intelligent, obedient child.

On Saturday evening, August 24, 1946, Mr. and Mrs. Shirack, who had been out at their farm at work, and Lois Caldwell, who had been with them, came to the Caldwell home for dinner. They reached there about six o'clock p. m. Garry was anxious to play with Mike Godbey, ate his dinner hurriedly, and Lois Caldwell took him across the street to the Godbey home. Mike was playing

with his little cars on the sidewalk directly in front of the Godbey home and Mr. Godbey was in his front yard only a few feet from where Mike was playing. Garry started to play with Mike and Lois left him playing with Mike near Mr. Godbey and returned to the Caldwell home. After playing on the sidewalk a few minutes Mr. Godbey went into the house and both Mike and Garry went in. They were in the house only a few minutes when Mr. Godbey and one of his tenants came out of the house and walked to the north side of the Godbey house, where they were looking in the grass for a key which had been lost. Garry followed them around to the north side of the house. For some unknown reason Garry took a notion to go back to the Caldwell home and started across the street in a somewhat southwesterly direction. At that time Kent Davis, an employee of the defendant, B. B. Gage, was driving south on Ninth street, with a one and one-half ton truck loaded with sheets of tin, tools and a winch owned by defendant and used in his business. It was about 6:40 p. m. The sun was shining, it was a nice, clear day, the street was level, the pavement dry, and there was no other traffic on the street at the time. When Kent Davis, driving the truck, was in the intersection of Grand avenue and Ninth street he saw the child Garry just off the curb on the east side of the street. He started running across. Davis was driving about thirty-five miles an hour and continued south on the west side of the street and struck the child Garry, who had just passed the center of the street. The child was thrown about twenty-five feet to the south and was so injured that he died a few hours later. It developed the truck had no brakes and the driver did not slacken his speed or vary the course of the truck in order to avoid hitting the child. The above and other pertinent facts were alleged in the petition.

The answer admitted the residence of the parties as alleged in the petition; that the child Garry died intestate; that he was of the age of about two years and six months, and "that he died as a result of injuries received in a collision with an automobile owned by the defendant, B. B. Gage, and operated by the defendant, Kent Davis." It contained a general denial of matters not admitted and alleged negligence of plaintiffs in not properly caring for their child. These allegations were denied in a reply.

Answering special questions the jury found the truck was going thirty-five miles an hour when it hit the child; that it was 160 feet

north of the child when he started across the street; that at the speed Kent Davis was driving the truck he could have stopped it within eighty feet if the brakes were in perfect mechanical condition; that from the time the child started across the street the driver did not do anything he could to avoid colliding with the child; that he failed to exercise proper caution; that Lois Caldwell took the child across the street with the consent of the child's mother; that she did not specifically request anyone to look after Garry and keep him out of the street; that Gary crossed the street unknown to Mr. or Mrs. Godbey; that the injury and death of Garry was not due to an accident as defined in the court's instructions; that the negligence of defendant consisted of "bad brakes, excessive rate of speed and not having truck under control."

After the verdict was received defendants filed the motion previously mentioned for judgment for defendants upon the special questions and the undisputed evidence. They also filed a motion for a new trial upon numerous grounds. Both motions were overruled. No complaint is made of the overruling of the motion for a new trial. The sole contention is that the court erred in not sustaining their motion for judgment.

Counsel for appellants do not argue that the answers to the special questions are so in conflict with the general verdict that the latter cannot stand. If such an argument had been made we think it would have had no substantial basis.

Counsel for appellants argue that the "uncontradicted" evidence shows clearly that plaintiffs were guilty of contributory negligence which barred their recovery. In short, they ask this court to examine the evidence and hold in accordance with their view. Under the record in this case this may be classified as a robust request. In their answer defendants pleaded that the plaintiffs were guilty of negligence which barred their recovery. That was put in issue by plaintiffs' reply. Defendants did not file a demurrer to plaintiffs' evidence. They make no complaint about the instructions of the court, hence we must assume that the court gave all necessary and proper instructions pertaining to that feature of the case. They did not move for a directed verdict at the close of all the evidence. In short, they submitted that question to the jury, and the general verdict for plaintiffs was a finding against them. The matter of weighing the evidence and passing upon the credibility of witnesses is for the trial court, not this court. The trial court has performed

that function. The question presented was one in which the parties were entitled to a trial by jury, not by the court; certainly not by this court.

The principles of law which govern the question are at least fairly well settled. Normally the question of negligence, either of defendant or of the plaintiff, is a question of fact, and the burden of proof is upon the party who pleads it. It is only where the negligence is so clear that reasonable minds could not reach different conclusions concerning it that the court is authorized to say that there was or was not negligence.

Questions of that kind have arisen in actions by parents for damages to children, or in actions for damages for their death, alleged to have resulted from the negligence of the defendant. In relatively few of the cases where contributory negligence of plaintiff was relied upon as a defense the facts have been such that the courts have said, as a matter of law, that the plaintiff's negligence barred his recovery. See *Sullivan v. Chadwick*, 236 Mass. 130, 127 N. E. 632, where the parents, who lived upon a street traversed by as many as one hundred automobiles and many streetcars every hour, permitted their son, three years and nine months old, to wander for two or three hours on the public streets; *Stachowicz v. Matera*, 257 Mass. 283, 153 N. E. 547, where a mother, without circumstances justifying it, left her child, two years and seven months old, unattended, in front of a store across a busy street from her home and walked away, when the child ran into the street and was injured. Some other cases are collected in the annotation in 51 A. L. R., pp. 213 to 216.

In a few other cases the courts have held under the facts that as a matter of law the plaintiff was not negligent and the question should never have been submitted even to a jury. (*Deach v. St. Paul City Railway Co.*, 215 Minn. 171, 9 N. W. 2d 735; *Barker v. Savas et al.*, 52 Utah 262, 172 Pac. 672. Some other cases on this point are collected in the annotation in 51 A. L. R., pp. 216 to 218.

In a great majority of such cases the courts have held that the question of plaintiff's contributory negligence was a question for the jury. This court has so held in *Schaubel v. City of Manhattan*, 102 Kan. 430, 170 Pac. 984. See, also, *C. & A. R. R. Co. v. Logue*, 158 Ill. 621, 42 N. E. 53; *I. C. R. R. Co. v. Warriner*, 229 Ill. 91, 82 N. E. 246; *Walsh v. Loorem*, 180 Mass. 18, 61 N. E. 222; *Albert v. Terminal Railway Co.*, 192 Mo. App. 665, 179 S. W. 955; *Dattola et ux.*,

*Aplnts., v. Burt Bros., Inc.*, 288 Pa. 134, 135 Atl. 763. Many other cases on this point are collected in the annotation in 51 A. L. R., pp. 218 to 229.

The question, of course, in each case is whether the parents used due care. This involves the consideration of all the facts and circumstances which would have any bearing upon the matter—the economic condition of the parents, who and under what circumstances they live, the age and intelligence of the child, the circumstances under which the injury occurred, the likelihood that they should have considered the particular injury which did occur, in fact all the circumstances that would have any bearing upon the question should be taken into account, including the credibility of the witnesses who testified. (See, Restatement, Torts, § 496; 38 Am. Jur. 892, Negligence, § 207; 45 C. J. 1012.)

To avoid the charge of contributory negligence parents are not compelled to watch their small children every minute. They are required only to use due diligence. It is possible that a child, having reasonable care, may elude its parents and get into a place of danger.

There is a suggestion in appellants' brief that plaintiffs were negligent in permitting Lois Caldwell to take the child across the street and leave him to play with Mike Godbey. This view lacks merit. Many cases have dealt with similar situations. (See annotations in 123 A. L. R. 147.)

Neither does the record sustain the contention of appellants that the child was left on a sidewalk in front of the Godbey home "unattended." From the evidence, which we only scantily outlined earlier in this opinion, the jury might well have concluded that the child was left at a neighbor's home to play with a neighbor's child, as many a parent has done heretofore and will do hereafter.

Appellants cite *Smith v. United Power & Light Corp.*, 142 Kan. 723, 51 P. 2d 976. In that case the mother left her twenty-two months old daughter with her five-year-old son to play in a small garden enclosed with a woven wire fence, having a gate which did not quite close and which she did not fasten. She then went about her work and paid no attention to the children for fifteen or twenty minutes, when her son came and told the mother the little girl had wandered away. A search developed that she had fallen into a nearby creek and drowned. In the parents' action for her wrongful death it was held they were barred by their negligence. We think

a statement of the facts clearly distinguishes the case from the one before us.

In order to be relieved of the charge of contributory negligence plaintiffs were not required to anticipate that someone would drive along the street with a loaded truck which had no effective brakes, driven by a person who obviously exercised no care to avoid the child after the driver of the truck saw the child on the street and start across. Even if his brakes were not functioning he could have changed his course in a wide street where there was no other traffic and have avoided hitting the child. Counsel for appellants very properly do not contend that defendants were not negligent. Indeed, the negligence was so great that the jury might have regarded it as the sole proximate cause of the collision. Findings Nos. 4 and 12 so indicate.

We find no error in the record. The judgment of the court below is affirmed.