MULGREW BLACKTOP, INC., Robert J. and Mary Lou Mulgrew, and Thomas J. and Joan K. Mulgrew, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 8-2282-C-1.

United States District Court,
S. D. Iowa,
Central Division.

Dec. 19, 1969.

Donald A. Wine, Des Moines, Iowa, for plaintiffs.

Johnnie M. Walters, Asst. Atty. Gen., Donald R. Anderson and Risden C. Ackerman, Attys., Dept. of Justice, and Al-

len L. Donielson, U. S. Atty., Southern Dist. of Iowa, for defendant.

## MEMORANDUM AND ORDER

STEPHENSON, Chief Judge.

This is an action for the refund of income taxes and interest with respect to alleged overpayments of Federal Income Taxes for the taxable years 1962, 1963, 1964 and 1965. The jurisdiction of the Court pursuant to 28 U.S.C. § 1346(a) (1) is established. Most of the facts have been stipulated and are found accordingly.

Plaintiffs Robert J. Mulgrew and Thomas J. Mulgrew are brothers. They are the principal officers and sole stockholders of plaintiff Mulgrew Blacktop, Inc., an Iowa Corporation engaged in the business of asphalt paving. Plaintiffs Mary Lou Mulgrew and Joan K. Mulgrew are the wives, respectively, of Robert and Thomas.

Robert and Mary Lou Mulgrew filed joint returns for each of the calendar years here involved, as did Thomas and Joan Mulgrew. Mulgrew Blacktop, Inc. (hereinafter sometimes referred to as "Blacktop" or "the corporation"), filed its return on the basis of fiscal years ending November 30 in each of the years in question. All such returns were timely filed with the District Director of Internal Revenue, Des Moines, Iowa. Deficiencies were assessed in each case. After payment of the deficiency assessments, the plaintiffs filed claims for refund which were denied. This action was timely commenced, and plaintiffs allege that they are entitled to refunds totalling $78,364.70 plus interest. Several of the claims presented by plaintiffs' complaint are the subject of a settlement now pending. This memorandum will therefore concern only three of plaintiffs' claims.

## THE AUTOMOBILE ACCIDENT

During 1963, Mulgrew Blacktop, Inc., owned several automobiles, one of which was used exclusively by Thomas J. Mulgrew. On April 17, 1963, Thomas, prior to going to work, discovered that one of his children was ill and should be taken to see a physician. After Thomas, in the company car, took the child to the physician where the child was treated, he took the child back home. At approximately 11:00 a. m., Thomas left home in the automobile owned by Blacktop and proceeded on his way to the company offices. Enroute to work and while in a residential district, the company car, driven by Thomas with the consent of Blacktop, struck a four year old child, resulting in severe injuries to the child. Thomas was cited by the local Police Department for speeding, to which charge he pled guilty and paid the appropriate fine.

A suit to recover for personal injuries was instituted against both Thomas and the corporation. The prayer in said lawsuit was for $750,000, which amount, if recovered, would have bankrupted the corporation and could not have been paid by Thomas. In 1965, the lawsuit was settled by payment of $117,500 to the injured child on the basis of a confession of judgment signed by both Thomas and Mulgrew Blacktop, Inc. $100,000 was paid by the insurance company which carried the liability policy on the car, and the remaining $17,500 was paid by the corporation in the form of $5,000 cash and two promissory notes of $6,250 each, due July 1, 1966, and July 1, 1967.

Blacktop deducted the $17,500 payment, as well as $2,000 paid as legal fees in connection with the lawsuit on its 1965 federal income tax return. The Commissioner of Internal Revenue disallowed the $19,500 deduction as ordinary and necessary business expenses on the ground that Thomas was not acting within the scope of his employment when the accident occurred.

At the time of the settlement, Thomas had a net worth in excess of $19,500, and could have executed the notes as set forth in the consent judgment had the cash not been paid or the notes executed by Blacktop.

The Government's claim that Thomas was not acting within the scope of his employment at the time of the accident cannot be sustained. Heintz v. Iowa Packing Co., 222 Iowa 517, 526–527, 268 N.W. 607, 613 (1936); Orris v. Tolerton & Warfield Co., 201 Iowa 1344, 1351, 207 N.W. 365, 368 (1926). In any event the Government appears to have abandoned this contention. It now claims that the deduction is not allowable as an ordinary and necessary business expense of the corporation because the corporation has or may have a right of indemnity over against Thomas, and thus the $17,500 settlement payment by Blacktop created a debt owed to it by Thomas, which debt did not become worthless within the taxable year.

The Government argues that Blacktop was liable for the injuries caused by the accident solely because an Iowa statute[1] makes it liable. Since the liability of the corporation is secondary or derivative, while that of Thomas is primary,[2] Blacktop could have sued Thomas for indemnity. Thus the payment of $17,500 for the settlement of the lawsuit, and the $2,000 legal fees in connection therewith created a debt in favor of the corporation, rather than a deductible expense.

Plaintiff Mulgrew Blacktop, Inc., contends, on the other hand, that the liability of the corporation was separate from that of Thomas J. Mulgrew, and that the settlement payment was a valid business expense of the corporation. It further contends that the settlement payment gave rise, not to a debt, but to a possible cause of action for indemnity.

It is quite clear that no debtor-creditor relationship between Thomas and the corporation was created by the settlement payment. At most the corporation obtained a right of action against Thomas for indemnity.

Under the circumstances of this case, the expense incurred by payment of the settlement must be viewed as a deductible business expense. The payment arose out of the ownership of the car. The car was owned in the course of the corporation's business and was being driven with the consent of the corporation. Under Iowa Code § 321.493 the corporation was liable for damages caused by the automobile. Such expenses are ordinary and necessary business expenses deductible in the year incurred. See Anderson v. Commissioner of Internal Revenue, 81 F.2d 457 (10th Cir. 1936); Plante v. United States, 226 F. Supp. 314 (D.N.H.1963). See also Rev. Rul. 69–491, 1969 Int.Rev.Bull. No. 38, at 6. Whether recoupment of the expense through a suit for indemnity would affect the tax liability of the corporation or of Thomas is not an issue before the Court.

The $2,000 expenses for legal fees is also properly deductible. Kornhauser v. United States, 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505 (1928).

## AUTOMOBILE EXPENSES

In each of the years here in question, Mulgrew Blacktop, Inc., owned two automobiles. One was assigned to Robert J. Mulgrew and one to Thomas J. Mulgrew for their unrestricted use. All operating expenses, including insurance, maintenance, gas, oil and repairs, were paid by the corporation.

Both Robert and Thomas used the automobiles in all of the corporate activities, such as visiting proposed job sites for the preparation of bids, visiting job sites for supervision of the construction activities, visiting potential clients, as well as any and all other corporate business. On many occasions, principally during the construction season, the of-

---

1. Iowa Code § 321.493 (1966) provides in part: "In all cases where damage is done by any motor vehicle by reason of negligence of the driver, and driven with the consent of the owner, the owner of the motor vehicle shall be liable for such damage."

2. See Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 1143, 49 N.W.2d 501, 506 (1951).

ficers would not go to the office to begin work for the company, but rather, would inspect jobs after leaving home before going to the office. In cases of major jobs not in close proximity to Dubuque, they would not even go to the office, but rather, would work directly at the job for the entire day. In addition, in a considerable number of instances, one of the officers would be on a job location for a considerable number of days or would be traveling between jobs without returning home.

Both Robert and Thomas, having unrestricted use of these automobiles, also used them for such personal use as they saw fit, such as driving from home to work and from work to home, for taking the family to church, to visit friends, to entertainment events, and for all the other things a family uses their personal automobile. Both were active in local politics and community affairs. Although both Joan and Mary Lou each owned a car which they themselves used in carrying on the personal affairs of the family, Robert and Thomas owned no automobile other than those supplied by the corporation and generally used the corporate automobiles when they were driving.

Both Robert and Thomas, on occasions when their company cars were either being repaired or needed for other uses, used their wives' personal cars for business involving the corporation and made no charge to the corporation for such use; nor did they take any personal deductions on their own tax returns for such use. While neither the company nor the officers maintained any books or records to show the extent of the use, it has been stipulated that, if called to testify, both Robert and Thomas would estimate that the amount of this use was equal to or greater than the amount of personal use made of the corporate automobiles during any of the years in question. The Commissioner of Internal Revenue disallowed $600 of the total automobile expenses incurred by Mulgrew Blacktop, Inc., in each of the years here in question on the basis that this amount of the automobile expense related solely to

the personal use made of the corporate automobiles by Robert and Thomas, in the amount of $300 each. In disallowing this expense, the Commissioner of Internal Revenue determined that this amount was additional income to each officer, and therefore included $300 in each officier's personal income for each year.

From the stipulation and the briefs filed herein, it would appear that there is no longer any dispute that the amount disallowed is reasonable, if the payments are in fact not deductible as automobile expense of the corporation.

■ Robert and Thomas argue that since they used their wives' personal cars in company business in an amount equal to or in excess of $300, but claimed no deduction therefor, there is in essence a "wash." That is, even though it be determined that there is additional income to each in the amount of $300, they are entitled to a $300 deduction for the use of their wives' personal cars in company business. Unfortunately for this claim, no such deduction was claimed by them, and in admitting that the corporate vehicles were used for commuting and other non-deductible personal business, they have failed to overcome their burden of proving that the determination of the Commissioner that this payment amounts to additional income to them is incorrect.

■ Blacktop also contests the denial of this payment as an ordinary and necessary business expense. It is elementary law that expenses incurred for commuting and other personal and family purposes are not deductible items. No records were kept as to the use of the personal automobiles for business use, and no claim for this amount was ever made. The payments made by the company were for the use of the company automobiles. The question of whether a deduction would be permissible for reimbursement of the expenses incurred in the use of the private automobiles is not before the Court. Nor has the corporation sustained its burden of proof that the payments were intended as additional compensation for the officers.

## TRAVEL AND ENTERTAINMENT EXPENSES

In its fiscal years 1962, 1963, 1964 and 1965, Mulgrew Blacktop, Inc., deducted $3,698, $4,398, $4,257, and $935 respectively as travel and entertainment expenses. Of the above amounts, Robert J. Mulgrew was paid the amount of $1,600, $1,363, $1,425 and $935 respectively as reimbursement for travel and entertainment expenses incurred while out of town supervising construction projects.

While the corporation did not require Robert to account for these payments, it has been stipulated that he would testify that these funds were expended for lodging and meals for himself while traveling and supervising paving jobs on behalf of the corporation, for meals for employees of the corporation while working on such jobs, and for entertainment of corporation customers.

Neither Mulgrew Blacktop, Inc., nor Robert Mulgrew maintained any records which show the time, place, business purpose or business relationship of any of these expenditures. The only record maintained by the corporation is the check stub showing the date and amount of each check issued to Robert. An affidavit executed by Robert showing his recollection of what project the funds were used for, as well as his sworn statement that the funds were expended for business purposes is attached to the complaint as part of Exhibit A–1.

In a prior audit, the travel and entertainment expenses paid to Robert were also disallowed on the basis of an absence of records substantiating the expenditures. Robert at that time was advised by the Internal Revenue Service and by the corporation's accountant that records must be kept showing the date, time, and business purpose or business relationship of the expenditures.

Of the above listed payments made by Blacktop during its fiscal year to Robert, the amounts of $1,500, $1,413, and $1,425 were paid to him during his calendar years 1962, 1963 and 1964 respectively. When the Commissioner of Internal Revenue disallowed the travel and entertainment expenses to the corporation, he simultaneously increased Robert's gross income by the amounts received by Robert in his calendar year, since Robert had excluded these sums from income when he filed his tax returns.

The statute [3] and regulations [4] in effect subsequent to January 1, 1963,

---

3. 26 U.S.C. § 274(d) provides in part as follows:

(d) Substantiation Required.—No deduction shall be allowed—

(1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home),

(2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or

\* \* \* \* \*

unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item and, (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift.

4. Treas.Reg. § 1.162–17 provides in part as follows:

(c) *Expenses for which the employee is not required to account to his employer.* If the employee is not required to account to his employer for his ordinary and necessary business expenses, e. g., travel, transportation, entertainment, and similar items, or, though required, fails to account for such expenses, he must submit, as a part of his tax return, a statement showing the following information:

\* \* \* \* \*

(2) The nature of his occupation, the number of days away from home on business, and the total amount of ordinary and necessary business expenses paid or incurred by him \* \* \* broken down into such broad categories as transportation, meals and lodging ex-

clearly specify that no deduction shall be allowed for travel and entertainment expense unless substantiated by adequate records or sufficient evidence showing the amount expended, the time and place of the expenditure, the business purpose of the expenditure, and the business relationship of the persons entertained. While it is probable that Robert J. Mulgrew did incur some travel and entertainment expenses in the years 1963, 1964 and 1965, and that the corporation made payments to him therefor, no deduction may be allowed for these expenses in the absence of adequate records. Similarly, the expenses not being deductible, the payments received by Robert during these years represent additional income to him.

As to the year 1962, the rule of Cohan v. Commissioner of Internal Revenue, 39 F.2d 540 (2d Cir. 1930) governs the deductibility of travel and entertainment expenses. Under the doctrine of that case, the Commissioner or the Court must make as close an approximation as can be of the amount actually expended for travel and entertainment expenses, and allow that amount as a deduction. The "Cohan Rule," however, comes into play only when the taxpayer has sustained his burden of proving that substantial sums were in fact expended for travel and entertainment, and that such were ordinary and necessary business expenses. Here the taxpayers have failed to sustain this burden. There is no showing of what the sums reputedly expended were for or the business purpose or relationship thereof. There is only the affidavit of Robert J. Mulgrew that general sums were expended on specified dates during the course of specified jobs. Plaintiffs have failed to establish the incorrectness of the Commissioner's determination.

## SUMMARY

The Court therefore finds that the Commissioner of Internal Revenue erroneously disallowed the deductions from income claimed by the plaintiff Mulgrew Blacktop, Inc., in the amount of $17,500 for settlement of the personal injury action, and in the amount of $2,000 for attorney fees in connection therewith. The Court further finds that plaintiffs have failed to establish that the determination of the Commissioner with respect to the $600 automobile expense deduction in each of the years 1962, 1963, 1964 and 1965 is incorrect. The Court further finds that plaintiffs have failed to establish that the determination of the Commissioner with respect to the travel and entertainment expenses claimed to have been incurred by Robert J. Mulgrew and reimbursed by Mulgrew Blacktop, Inc., is incorrect.

The foregoing shall constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure. Judgment will be entered accordingly. Counsel for defendant will submit an appropriate order for judgment.

---

penses, and other business expenses.

(d) *Substantiation of items of expense.*

\* \* \* \* \*

(2) The Code contemplates that taxpayers keep such records as will be sufficient to enable the Commissioner to correctly determine income tax liability. Accordingly, it is to the advantage of taxpayers who may be called upon to substantiate expense account information to maintain *as adequate and detailed* records of travel, transportation, entertainment, and similar business expenses as practical since the burden of proof is upon the taxpayer to show that such expenses were not only paid or incurred but also that they constitute ordinary and necessary business expenses. One method for substantiating expenses incurred by an employee in connection with his employment is through the preparation of a daily diary or record of expenditures, maintained in sufficient detail to enable him to readily identify the amount and nature of any expenditure, *and the preservation of* supporting documents especially in connection with large or exceptional expenditures. \* \* \*