T.C. Memo. 2001-165

UNITED STATES TAX COURT

FABIAN VAKSMAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4741-00.                          Filed July 3, 2001.

Fabian Vaksman, pro se.

<u>Derek B. Matta</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ARMEN, <u>Special Trial Judge</u>:  Respondent determined a
deficiency in petitioner's Federal income tax for 1997 in the
amount of $2,217.

After concessions by the parties,[1] the issues for decision, all of which involve the substantiation of deductions claimed by petitioner on his Schedule C, are as follows:

(1) Whether petitioner is entitled to a deduction for depreciation on his automobile.  We hold that he is not.

(2) Whether petitioner is entitled to a deduction for cellular telephone expense.  We hold that he is not.

(3) Whether petitioner is entitled to a deduction for educational expense.  We hold that he is not.

(4) Whether petitioner is entitled to a deduction, in excess of the amount allowed by respondent in the notice of deficiency, for business use of home.  We hold that he is not.

Adjustments in the notice of deficiency relating to self-employment tax under section 1401 and the deduction under section 164(f) for one-half the self-employment tax are mechanical matters.[2]  The resolution of these adjustments depends solely on

_____

[1]  Petitioner concedes that he failed to include $305 of interest income from Chase Bank on his return.  Respondent concedes that petitioner is entitled to the deduction for "Davis Petroleum expenses" as claimed by petitioner on Schedule C.  The parties agree that petitioner is entitled to a Schedule C deduction for tax preparation fees in the amount of $198, rather than $248 as claimed. (The parties also agree that petitioner is entitled to a Schedule A deduction for tax preparation fees in the amount of $127; however, that deduction will have no tax effect if petitioner's itemized deductions do not exceed the standard deduction.)  Finally, respondent concedes that the examination of petitioner's tax return began after July 22, 1998.

[2] Unless otherwise indicated, all section references are to

(continued...)

our disposition of the disputed issues, as well as the parties'
concessions regarding the Schedule C deductions described <u>supra</u>
in note 1.

## FINDINGS OF FACT

Some of the facts have been stipulated, and they are so
found. Petitioner resided in Houston, Texas, at the time that
his petition was filed with the Court.

During 1997, the taxable year in issue, petitioner held
himself out as a Russian translator.

On January 7, 1997, petitioner completed work on a contract
with Davis Petroleum Corp. of Houston, Texas (Davis Petroleum).[3]
Thereafter, from January 8, 1997, through the end of the year,
petitioner did not have any clients for whom he provided
translation services.

During 1997, petitioner was registered with the History
Department of the University of Houston, where he was pursuing a
doctoral degree. From May 1996 to February 1997, petitioner also
worked for the History Department as a research assistant,
focusing on Russian medieval history, for which he was paid a

---

[2](...continued)
the Internal Revenue Code in effect for 1997, the taxable year in
issue, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

[3] On or about Jan. 27, 1997, Davis Petroleum paid
petitioner $19,244 for services rendered (and expenses incurred)
by petitioner from November 1996 through Jan. 7, 1997. Most, if
not all, of the amount paid relates to a trip to Kazakhstan.

stipend.[4]

During 1997, petitioner rented a one-bedroom apartment. Petitioner had a land-line telephone in his apartment, and he also had a cellular telephone.

During 1997, petitioner owned a 1994 Pontiac automobile. Petitioner did not maintain any log or other record regarding the use of his vehicle.

Petitioner's Income Tax Return

Petitioner filed a Federal income tax return for 1997, utilizing Form 1040PC, Format U.S. Individual Income Tax Return.[5] Petitioner "attached" to his return several forms and schedules, including the following: Schedule C, Profit or Loss From Business; Form 4562, Depreciation and Amortization; and Form 8829, Expenses for Business Use of Your Home.

---

[4] Petitioner testified that his work as a research assistant in Russian medieval history "couldn't really be reconciled with [my] dissertation because I actually passed my orals in US history".

[5] A Form 1040PC return is a computerized return prepared using a personal computer; it is the forerunner of electronic filing. IRS Publication 17 (1997 ed.) describes a Form 1040PC return as follows:

> The computer prints the return in a three-column "answer sheet" format. It prints line numbers and dollar amounts (and/or supporting explanations if necessary) only for lines on which you made an entry. Supporting tax forms and schedules are also printed in this format. As a result, an 11-page conventional return requiring forms and schedules can be printed as a two-page 1040PC return.

Petitioner reported his tax liability on Form 1040PC as follows:

| | |
|---|---:|
| Wages | $1,714 |
| Taxable interest | 3,518 |
| Business income (Schedule C) | 4,434 |
| Unemployment compensation | 2,837 |
| Total income | 12,503 |
| Less: ½ self-employment tax | -314 |
| Adjusted gross income | 12,189 |
| Less: Standard deduction | -4,150 |
| | 8,039 |
| Less: Personal exemption | -2,650 |
| Taxable income | 5,389 |
| | |
| Tax | 806 |
| Self-employment tax | 627 |
| Total tax | 1,433 |
| Less: Payments | -0- |
| Amount owed | [1]1,510 |

> [1]Includes estimated tax penalty in the amount of $77.

Petitioner reported business income on Schedule C as follows:

| | | |
|---|---:|---:|
| Gross receipts [Davis Petroleum Corp.] | | $19,244 |
| Less: Returns and allowances | | --- |
| Gross profit | | 19,244 |
| Less: Cost of goods sold | | --- |
| Gross income | | 19,244 |
| Less: | | |
| Car and truck expenses | $2,048 | |
| Depreciation (Form 4562) | 1,325 | |
| Legal and professional | 500 | |
| Office expense | 400 | |
| Other expenses[1] | 5,257 | |
| Total expenses | | -9,530 |
| Tentative profit | | 9,714 |
| Less: Business use of home (Form 8829) | | -5,280 |
| Net profit | | 4,434 |

[1]Other expenses [see next page]

[1]Other expenses

| | |
|---|---|
| Davis Petroleum expenses | $2,744 |
| Cellular telephone | 715 |
| Continuing education | 1,550 |
| Tax preparation | 248 |
| | 5,257 |

In computing the $1,325 depreciation deduction on Form 4562, petitioner determined his automobile's depreciable basis by applying a business use percentage (79.1 percent) against the automobile's reported cost basis ($16,500).  Petitioner determined the business use percentage as follows:

| | |
|---|---|
| Total business miles driven during year | 11,865 |
| Total commuting miles driven during year | --- |
| Total other personal miles driven during year | 3,135 |
| Total miles driven during year | 15,000 |

Business use percentage =
11,865 business miles/15,000 total miles = 79.10%

In computing the $5,280 deduction for business use of home on Form 8829, petitioner applied a business use percentage (80 percent) against the reported cost ($6,600) of keeping up and running his apartment.  Petitioner determined the business use percentage by dividing his estimate of the area used regularly and exclusively for business (720 square feet) by the total area of his apartment (900 square feet).

## OPINION[6]

### A. Depreciation

Petitioner claims that he drove his automobile 15,000 miles in 1997 and that of this total, exactly 79.10 percent, or 11,865 miles, were for business. We find this claim curious, given the fact that (1) from January 8, 1997, through the end of the year, petitioner did not have any clients for whom he provided translation services and (2) petitioner did not maintain any log or other record regarding the use of his vehicle.[7]

By virtue of the strict substantiation requirements of section 274(d)(4), no deduction is allowable with respect to any listed property, as defined in section 280F(d)(4), on the basis of any approximation or the unsupported testimony of the

---

[6] We decide the issues in this case without regard to the general rule of sec. 7491(a)(1), which was amended by the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(a), 112 Stat. 685, 726, because the record demonstrates that petitioner did not comply with the requirements of sec. 7491(a)(2)(A) and (B). See Higbee v. Commissioner, 116 T.C. ___ (June 6, 2001). Moreover, we do not regard petitioner's conclusory and self-serving statements as credible evidence within the meaning of sec. 7491(a)(1). See id.

[7] At trial, petitioner was asked how he differentiated between business use and personal use of his vehicle. Petitioner's explanation, which was nonresponsive to the question, was as follows:

> I do what's feasible in this situation, and the cost of running this business had to be kept to a minimum, so to maintain separate logs like this would be very cumbersome. It's an undue burden on a small business like this, so I did not have any such record.

taxpayer.  See <u>Sanford v. Commissioner</u>, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); <u>Golden v. Commissioner</u>, T.C. Memo. 1993-602; sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  "Listed property" is defined to include a passenger automobile.  Sec. 280F(d)(4)(A)(i).

In order to be allowed a deduction with respect to listed property, the taxpayer must substantiate the deduction by adequate records, or by sufficient evidence corroborating the taxpayer's own statement, showing: (1) The amount of such expense or other item; (2) the time and place of the use of the property; and (3) the business purpose of the expense or other item.  See sec. 274(d); see also sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985) (regarding the requisite elements to be substantiated with respect to any listed property); sec. 1.274-5T(c), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985) (regarding the specific rules of substantiation).

In view of the foregoing, we sustain respondent's determination and hold that petitioner is not entitled to any deduction for depreciation on his automobile.[8]

---

[8]  The record demonstrates that petitioner may also not be entitled to the other automobile-related deduction ($2,048) that he claimed on Schedule C.  See sec. 274(d)(4).  However, respondent did not disallow this deduction in the notice of
(continued...)

B.  Cellular Telephone Expense

Petitioner claims that he paid $715 for cellular telephone service.  At trial, petitioner admitted that there was "some" personal use of his cellular telephone; he insisted, however, that such use was minimal and that his cellular telephone was used principally in order to insure the safety and security of his clients.[9]

The record does not include any documentary evidence showing that petitioner paid any particular amount of money to any particular telephone company for cellular telephone service.

A cellular telephone is classified as listed property under section 280F(d)(4)(A)(v).  See Tarakci v. Commissioner, T.C. Memo. 2000-358; Nitschke v. Commissioner, T.C. Memo. 2000-230. Accordingly, no deduction is allowable with respect to a cellular telephone on the basis of any approximation or the unsupported testimony of the taxpayer.  See sec. 274(d)(4); see also Taracki v. Commissioner, supra; Nitschke v. Commissioner, supra.

---

[8](...continued)
deficiency, nor did respondent ever assert any claim for an increased deficiency or otherwise raise the issue.  See sec. 6214(a).  Accordingly, we do not address this matter.

[9]  Petitioner testified as follows:

If I'm carrying a passenger who does not speak a word of English, * * * and he has a heart attack or something happen on the road or whatever, or he needs to talk to somebody on emergency basis, the cell phone is critical business expense to ensure * * * businessman safety.

In view of the foregoing, we sustain respondent's determination and hold that petitioner is not entitled to any deduction for cellular telephone expense.

C.  Educational Expense

Petitioner claims that he paid $1,550 for "continuing education".  At trial, petitioner testified that this amount represents what he paid to the University of Houston for "dissertation hours" in the pursuit of a Ph.D degree in history.[10]  The record does not include any documentary evidence showing that petitioner paid any particular amount of money to the University of Houston.  Regardless, the record does not demonstrate that there was a "proximate and direct relationship" between any educational expense that petitioner may have incurred in pursuing a course of study in the History Department and his job skills as a Russian translator.[11]  See Carroll v. Commissioner, 51 T.C. 213, 218 (1968), affd. 418 F.2d 91 (7th Cir. 1969); see also Schwartz v. Commissioner, 69 T.C. 877, 889 (1978); Zimmer v. Commissioner, T.C. Memo. 1992-678; sec. 1.162-5(a), Income Tax Regs.; cf. sec. 1.162-5(b)(1), Income Tax Regs.

---

[10]  Petitioner gave the impression that the focus of his doctoral studies was American history when he testified that "I actually passed my orals in U.S. history".

[11] Although petitioner's work as a research assistant for the History Department dealt with Russian medieval history, petitioner's academic orientation was apparently toward U.S. history.  See supra note 4.

However, petitioner's claim that the expense in question is deductible is based principally not on the theory that the expense is "educational", but rather on the theory that petitioner's "affiliation" with the University was essential for him to generate business.[12]

In order for an expense to be deductible as a business expense, the expense must be ordinary and necessary. See sec. 162(a). An expense is "ordinary" if it is "normal, usual, or customary" in the taxpayer's trade or business. Deputy v. du Pont, 308 U.S. 488, 495 (1940) (citing Welch v. Helvering, 290 U.S. 111, 114 (1933)). An expense is "necessary" if it is "appropriate and helpful". Welch v. Helvering, supra at 113. In deciding whether an expense is ordinary and necessary, we generally focus on whether there is a reasonably proximate relationship between the expense and the taxpayer's trade or business. See Henry v. Commissioner, 36 T.C. 879, 884 (1961). Conclusory statements by a taxpayer that the expense was incurred in pursuit of the taxpayer's trade or business are not sufficient

---

[12] According to petitioner, when someone needs a Russian translator:

> what they do is they call the university and they try to find within the university who knows someone there who can do this. So if I'm not affiliated, my name will not come up. Usually they call a professor of Russian, but they could call a lot of people, and that's how this business––the Davis Petroleum business was generated exactly that way.

to establish that the expense had a reasonably proximate relationship to that trade or business. See <u>Ferrer v. Commissioner</u>, 50 T.C. 177, 185 (1968), affd. per curiam 409 F.2d 1359 (2d Cir. 1969); see also <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986) ("we are not required to accept the self-serving testimony of petitioner * * * as gospel").

In the present case, petitioner was pursuing a doctoral degree in an academic discipline that was unrelated to his trade or business of being a Russian translator. Petitioner failed to demonstrate that the cost of pursuing such a degree was reasonably proximate to his trade or business. Indeed, petitioner admitted that Davis Petroleum did not contact the History Department of the University of Houston in search of a Russian translator.[13] The fact that petitioner was registered as a doctoral candidate in the History Department at the time that he was retained by Davis Petroleum does not, in our view, provide a sufficient nexus between the cost of university enrollment and petitioner's particular trade or business. Were it otherwise, the cost of university enrollment, regardless of the underlying academic discipline, would be deductible as a business

---

[13] We take notice of the fact that the Yellow Pages for major metropolitan areas such as Houston, Texas, includes a listing for "Translators & Interpreters". We also take notice of the fact that the American Translators Association maintains both a Translation Services Directory and searchable On-Line Directories (www.ATAnet.org) that list individuals and companies that provide translation services.

development expense; indeed, the cost of any activity or undertaking, regardless of its relationship to a taxpayer's trade or business, would be similarly deductible. The "ordinary and necessary" requirement, which is an integral part of section 162(a), is not so elastic a concept as to countenance a marginal relationship between an expense and a taxpayer's trade or business.

In view of the foregoing, we sustain respondent's determination and hold that petitioner is not entitled to any deduction for educational expense.

D.  Home Office Expense

Petitioner deducted $5,280 for business use of home. Petitioner claims that he used 80 percent of his one-bedroom apartment for business and that the cost of keeping up and running his apartment was $6,600. In contrast, respondent allowed a deduction in the amount of $1,588 based on a business use percentage of 25 applied against documented rent expense of $6,350.

At trial, petitioner readily admitted that the 80 percent figure was an estimate. Petitioner sought to justify his estimate through such testimony as "Even the bed is being used when I'm translating" and "I have my staplers standing in the bathroom."

As a general rule, section 280A(a) provides that no

deduction shall be allowed with respect to the use of a dwelling unit that is used by the taxpayer during the year as a residence. However, section 280A(c)(1) provides an exception for certain business use of a dwelling unit, provided, however, that a portion of the dwelling unit is <u>exclusively</u> used on a <u>regular</u> basis.

The fact that petitioner may use his bed when he translates or that he may store his staplers in his bathroom is insufficient to satisfy the requirement of section 280A(c)(1) regarding <u>exclusive</u> use. Moreover, the fact that petitioner did not have any clients for whom he provided translation services from January 8, 1997, through the end of the year undercuts petitioner's claim that he used 80 percent of his apartment for business on a <u>regular</u> basis.

In short, there is no persuasive evidence that more than 25 percent of petitioner's apartment was "exclusively used on a regular basis" for business, as required by section 280A(c)(1). In addition, there is no evidence that such percentage should be applied against any amount greater than $6,350. Accordingly, we sustain respondent's determination and hold that petitioner is not entitled to any deduction for business use of home greater than that allowed in the notice of deficiency.

<u>Conclusion</u>

To give effect to our disposition of the disputed issues, as well as the parties' concessions,

<u>Decision will be entered</u>

<u>under Rule 155</u>.